IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

TIMOTHY M. D.,

        Plaintiff,

v.                                          Civil Action No.
                                                5:17-CV-1283 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

AMDURSKY, PELKY, FENNELL &        JOHN D. CONNORS, ESQ.
WALLEN, P.C.
26 East Oneida Street
Oswego, NY 13126

FOR DEFENDANT:

HON. GRANT C. JAQUITH             ANDREEA L. LECHLEITNER, ESQ.
United States Attorney for the        Special Assistant U.S. Attorney
Northern District of New York
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on July 11, 2018, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: July 12, 2018
          Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------x
TIMOTHY M. D.

                        Plaintiff,

vs.                      5:17-CV-1283

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
------------------------------------------x

    Transcript of a **Decision** held during a Telephone Conference on July 11, 2018, at the James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

                 A P P E A R A N C E S

                    (By Telephone)

| | |
|---|---|
| For Plaintiff: | AMDURSKY, PELKY LAW FIRM<br>Attorneys at Law<br>26 Oneida Street<br>Oswego, New York 13126<br>  BY: JOHN D. CONNERS, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>  BY: ANDREEA L. LECHLEITNER, ESQ. |

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8547*

1     (In Chambers, Counsel present by telephone.)
2     THE COURT: All right. I have before me a request
3 for judicial review of an adverse determination by the Acting
4 Commissioner pursuant to 42 United States Code Sections
5 405(g) and 1383(c)(3).
6     The background is as follows: The plaintiff was
7 born in May of 1962 and is currently 56 years old. He was 51
8 years old at the time of the alleged onset of his disability
9 in October of 2013. He stands 6 foot 2 inches and at the
10 time of the hearing weighed 318 pounds, although it appears
11 that between 2013 and 2016, his weight fluctuated between 295
12 and 321 pounds.
13     Plaintiff has graduated from high school and
14 attended regular classes while in school. He lives alone, he
15 is divorced. He is right-hand dominant. He has a driver's
16 license.
17     Plaintiff worked from February of 1986 until June
18 of 2010 at a particular company. His last job was as a
19 foreman although he had also served in the past as a machine
20 operator, a braider, and in other capacities. He was
21 terminated, he asserts wrongfully so, apparently based on his
22 attendance record. The -- I note that when plaintiff was
23 examined by Dr. Shapiro on May 28, 2014, he indicated that he
24 believed he was wrongfully terminated but he stated that he
25 is unable to work at the present time because he applied for

1  many jobs and never got a call back, and wants to get off his
2  medication before he returns to work.  That's at page 254 of
3  the administrative transcript.
4      The plaintiff suffers from both mental and physical
5  impairments.  Physically, he suffers from obesity, back pain,
6  sleep apnea which, for which he uses a CPAP machine,
7  diabetes, hypertension.  He has had a back x-ray, that was in
8  November 2015, it was a thoracic spine x-ray which indicated
9  dextroscoliosis of the lower thoracolumbar spine with
10 moderate, mild to moderate degenerative changes throughout
11 the thoracic spine but with no acute abnormality.  That's at
12 page 279 of the administrative transcript.
13     Mentally, the plaintiff suffers from anxiety,
14 depression, and adjustment disorder, and fairly recently was
15 diagnosed as suffering from a major depressive disorder.  He,
16 however, has had no formal specialized treatment or
17 hospitalization for his mental condition.
18     Plaintiff treats with Dr. Padma Ram and began in
19 May of 2013.  He also sees Physician's Assistant Melissa
20 Barton in Dr. Ram's office.  He visits every three months
21 approximately, or as needed.
22     In terms of medications, he's been prescribed
23 hydrochlorothiazide, lisinopril, Metformin, Bupropion,
24 Escitalopran, Carvedilol, and also in the past has been on
25 Effexor and Viibryd.  He does note some side effects from

1  those medications, including dizziness, drowsiness, upset
2  stomach, and cramping.
3  Daily activities of the plaintiff includes
4  shopping, cooking, mostly microwaving, working on the
5  computer, visiting family, caring for himself, doing some
6  laundry, and some cleaning.
7  Procedurally, plaintiff applied for Title II and
8  Title XVI benefits on April 18, 2014.  That's at page 29 and
9  30 and 211.  He originally alleged an onset date of June 8,
10 2010, that was later amended to October 21, 2013.  On
11 January 21, 2016, a hearing was conducted by Administrative
12 Law Judge Marie Greener.  ALJ Greener issued a decision on
13 March 2, 2016 concluding that plaintiff was not disabled at
14 the relevant times and therefore ineligible for the benefits
15 sought.  That became a final determination of the agency on
16 September 25, 2017 when the Social Security Administration
17 Appeals Council denied plaintiff's request for review.
18 In her decision, ALJ Greener applied the familiar
19 five-step test for determining disability.  At step one, she
20 concluded that plaintiff had not engaged in substantial
21 gainful activity since June 8, 2010.
22 At step two, she concluded that plaintiff suffers
23 from obesity, and rejecting the various other asserted
24 disabilities including the back issue, anxiety and
25 depression, sleep apnea, hypertension, and diabetes.

1                    The -- at step three, ALJ Greener concluded that
2       plaintiff did not meet or medically equal any listed
3       presumptively disabling condition, noting that there no
4       longer is a listing that applies directly to obesity.  She
5       then determined, after surveying the medical evidence, that
6       plaintiff is capable of performing the following residual
7       functional capacity or RFC:  He can lift and/or carry
8       20 pounds occasionally and 10 pounds frequently, sit for six
9       hours in an eight-hour day and stand and/or walk for six
10      hours in an eight-hour day.
11                   This being consistent with the ability to perform a
12      full range of light work as defined in the regulations, the
13      ALJ then went on to determine at step four that plaintiff
14      cannot perform his past relevant work as a foreman for a
15      print packaging company due to primarily the exertional
16      requirements associated with that position.
17                   At step five, after determining that
18      transferability of skills would not affect the outcome, the
19      ALJ applied the Medical Vocational Guidelines or Grids and
20      determined under Rules 202.21 and 202.14 that plaintiff was
21      not disabled at the relevant times.
22                   As you know, my function is limited to determining
23      whether correct legal principles were applied and the
24      determination is supported by substantial evidence.  The
25      standard of review is fairly deferential.  I note at the

outset that it is plaintiff's burden through step four, including at the RFC stage, to determine, to prove not only the existence of conditions but limitations associated with those conditions on work functions. At step two, admittedly, the burden is fairly modest. However, as I indicated previously, the mere presence of a medical condition and diagnosis does not translate to limitations on the ability to perform basic work activities. The sleep apnea appears to be well controlled. Plaintiff specifically denied during I think more than one visit to Dr. Ram any fatigue. The back x-ray is fairly modest in its findings, and again, the treatment notes from Dr. Ram and Physician's Assistant Barton indicate that on many occasions he did not suffer from back pain and he was not on any serious prescription medication for pain.

Dr. Ram and PA Barton's notes on many occasions indicate that plaintiff was in good health. I've combed the records, the treatment records, including Exhibits 1F, 4F, and 6F, and I'll just go through briefly.

On 11/16/15, patient continues to take medications as directed, mental condition unchanged, mild to moderate pain and severity, no limitation of movement. No apparent anxiety or depression, affect is appropriate, that's at 280 to 283.

On 11/9/15, condition mostly well controlled since

last visit. Depression unchanged, denies mental illness or concentration difficulty. Walks with normal gait. Alert and oriented times three. Mood and affect normal, no apparent anxiety, depression, or agitation, that's at 285 to 289.

On 10/28/15, plaintiff has quick stabbing back pain and then it is gone. Doesn't last longer than a minute. Pain is very sporadic and does not radiate. Denies concentration difficulty or mental illness. Walks with a normal gait. Alert, oriented times three, attitude is cooperative and appropriate. No apparent anxiety, depression, or agitation, that's at 290 to 292.

On 7/31/15, hypertension well controlled. Denies fatigue, denies concentration difficulty or mental illness. No signs of acute distress, excuse me. Appears healthy and well developed. That's at 293 to 295.

7/30/15, patient is feeling well, describes work status as retired, takes Bupropion and Viibryd for depression, condition was mostly well controlled. Patient has lumbago caused by being overweight, condition uncontrolled but pain is moderate. And that's at pages 296 to 299.

And the other entries are very, very similar in nature.

The, in terms of -- so those and the daily activities clearly provide substantial evidence supporting

1   the physical component of the RFC.

2   Mentally, the ALJ relied in part on Dr. Bhutwala's
3   June 13, 2014 opinions, and the opinions of such a
4   nonexamining consultative expert can provide substantial
5   evidence.  Clearly there were some transitory mental problems
6   located -- indicated from time to time in treatment notes but
7   medical -- medication seems to have improved those.

8   The ALJ also relied on the clinical findings of
9   Dr. Shapiro in her report which is at 254 through 258 as also
10  supporting the mental aspect.  She noted, for example, that
11  attention and concentration was intact, plaintiff was able to
12  do counting, simple calculations and serial threes, remote
13  and recent memory skills were intact, that's at page 256.

14  So the ALJ did reject portions of Dr. Shapiro's
15  opinions and the reason for doing that was adequately
16  explained in the ALJ's decision and is supported by
17  substantial evidence.  In any event, the portions that were
18  rejected, even if they were improperly rejected, would result
19  in harmless error.  Under SSR 85-15, the basic mental demands
20  of competitive remunerative unskilled work include the
21  abilities on a sustained basis to understand, carry out, and
22  remember simple instructions, to respond appropriately to
23  supervision, coworkers, and usual work situations and to deal
24  with changes in a routine work setting.  It goes on to say, a
25  substantial loss of ability to meet any of these basic

1    work-related activities would severely limit the potential
2    occupational base.  I don't interpret Dr. Shapiro's medical
3    source statement as indicating that there is such a
4    substantial diminution in those areas where she did find some
5    limitations.
6              The treating -- the RFC issue, PA Barton obviously
7    is not an acceptable medical source or was not at the time, I
8    should say.  She is now, under the new regulations, which
9    don't apply in this case.  The ALJ rejected PA Barton's
10   opinions on two bases:  The basis of not being an acceptable
11   medical source, and because it's not supported by the
12   treatment notes, and that is outlined at page 20 of the
13   administrative transcript.  So even assuming that -- well,
14   first of all, the hearing was closed before Dr. Ram signed
15   the medical source statement and so the ALJ did not err in
16   not considering that medical source statement as that from a
17   treating source.  However, even if it were, the same
18   rationale would apply, the regulations require the same exact
19   factors to be considered when addressing an opinion of a
20   nonacceptable medical source as a treating source, and so
21   it's clear that it would have been rejected on the same
22   grounds.
23             There is not a medical source statement that
24   supports directly the physical component of the RFC, but the
25   case law, as the Commissioner argues, is quite clear that

1  there does not need to be, that there can be reliance on such
2  evidence as treatment notes, daily activities.  The Second
3  Circuit recently reaffirmed that proposition in *Ritchie Smith*
4  *v. Nancy A. Berryhill*, it's a summary order that is reported
5  at 2018 WL 3202766, it is a decision that was issued last
6  week on June 29, 2018.  *Halloran v. Barnhart*, 362 F.3d 28
7  from the Second Circuit 2004, stands for the similar
8  proposition.
9      It's very clear that the ALJ specified what she was
10 relying on, particularly the treatment notes and plaintiff's
11 daily activities, her rationale is properly stated, so that
12 adequate judicial review can be made.  The treatment notes
13 clearly support the RFC finding as well as the daily
14 activities.
15     So in terms of credibility, there was an argument
16 made that the credibility determination was not supported by
17 substantial evidence.  I disagree and I've reviewed the
18 Commissioner's decision regarding credibility and believe
19 that the proper two-step determination for making a
20 credibility assessment was applied and adequately supported
21 by substantial evidence.
22     It's clear that plaintiff's obesity was considered
23 by the ALJ throughout the decision but there is little
24 indication that it has more effect than what the RFC
25 reflects.  The step five determination is proper, the RFC

1  supported by substantial evidence, Rules 202.21 and 202.14
2  support the Commissioner's determination and are sufficient
3  to carry the Commissioner's burden at step five.
4              So in conclusion, I find that the determination was
5  supported by substantial evidence, I will grant judgment on
6  the pleadings to the defendant and dismiss plaintiff's
7  complaint.  You'll receive a short form order with a
8  transcript of this decision attached.
9              Thank you both for excellent presentations.  Hope
10 you have a good afternoon.
11             MS. LECHLEITNER:  Thank you, you too.
12             MR. CONNERS:  Thank you, Judge.
13                   (Proceedings Adjourned, 2:38 p.m.)
14
15
16
17
18
19
20
21
22
23
24
25

1    CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5    Official Realtime Court Reporter, in and for the

6    United States District Court for the Northern

7    District of New York, DO HEREBY CERTIFY that

8    pursuant to Section 753, Title 28, United States

9    Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                    Dated this 12th day of July, 2018.

17

18

19                    /S/ JODI L. HIBBARD

20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21

22

23

24

25

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547